IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ADRIAN JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-140 |
| | ) | |
| OFFICER DAVIS; OFFICER HORACE | ) | |
| RYANS; and WARDEN WILKES, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Smith State Prison in Glennville, Georgia, brought this case pursuant to 42 U.S.C. § 1983 regarding events alleged to have occurred at Augusta State Medical Prison in Grovetown, Georgia. Plaintiff is proceeding *pro se*. Before the Court is Officer Ryans's motion to dismiss. (Doc. no. 32.) For the reasons stated below, the Court **REPORTS** and **RECOMMENDS** Officer Ryans's motion to dismiss be **GRANTED**, (doc. no. 32).

**I.   BACKGROUND**

    **A.   Plaintiff's Complaint**

Plaintiff named three Defendants in his complaint dated June 12, 2018: (1) Warden Wilkes; (2) Officer Davis; and (3) Officer John Doe. (Doc. no. 1, pp. 1-3, 10.) The complaint alleges the following facts.

On January 17, 2017, Plaintiff was transferred to Augusta State Medical Prison ("ASMP") for a medical appointment. (Id. at 11.) Plaintiff was housed in segregation dorm 12-A, where Officer Davis was working. (Id.) Inmate Michael Hubber was transferred with Plaintiff and witnessed the entire series of events. (Id.) Plaintiff and Mr. Hubber were taken to the showers and left in separate locked showers until Officers Davis and Doe moved them to individual cells. (Id. at 11-12.) Officer Davis escorted Plaintiff to a cell and locked Plaintiff in the cell. (Id. at 12.) Officer Davis opened the tray flap in the door so Plaintiff could stick his hands through and Officer Davis could remove Plaintiff's handcuffs. (Id.) After Officer Davis removed Plaintiff's handcuffs, Plaintiff kept his right arm through the tray flap so he could ask Officer Davis about consulting with a mental health counselor. (Id.) Officer Davis asked Plaintiff to remove his arm from the tray flap. (Id.) Plaintiff against expressed his concern about seeing a counselor immediately. (Id.) Without a response or warning, Officer Davis set the forty-five-pound tray flap down on Plaintiff's arm and kicked the flap against Plaintiff's arm six times before slamming the flap on Plaintiff's arm six or seven more times with his hands. (Id. at 12-13.) Officer Davis held the flap up and yelled at Plaintiff to move his arm. (Id. at 13.)

Plaintiff did not realize his arm was bleeding until he pulled it back into the cell. (Id.) Plaintiff pleaded for help while Officer Davis locked the tray flap. (Id.) Officers Davis and Doe abandoned Plaintiff, who remained in the locked cell alone for over an hour with his artery cut in two. (Id.) Plaintiff nearly bled to death after being abandoned by Officer Davis, who knew Plaintiff was bleeding profusely. (Id. at 14.) The dormitory orderly, Mr. Humphrey, arrived over an hour later and provided medical assistance. (Id. at 13-14.) While performing his duties, Mr. Humphrey noticed the blood Plaintiff had pushed under the door before collapsing on the

2

cell floor.  (Id.)  After seeing Plaintiff and the floor of the cell, which was covered in blood, Mr. Humphrey notified the control booth of the emergency situation in Plaintiff's cell.  (Id. at 14.)

Lt. Chance, Sgt. Ryles, and two nurses arrived to provide medical assistance.  (Id. at 15.) Both officers wore camcorders but refused to document the blood loss despite Plaintiff's pleas. (Id.)  Plaintiff informed them Officer Davis caused his injury.  (Id.)  Security cameras in the dorms recorded the series of events.  (Id. at 16.)  Plaintiff was transported by ambulance to Augusta University Hospital, where he underwent surgery and was hospitalized for two-and-a-half days.  (Id.)  After surgery, the blood circulation specialist informed Plaintiff they were able to resume blood flow after his artery was severed but he may suffer permanent nerve damage. (Id. at 17.)  Plaintiff informed Augusta University staff of the cause of his injury, and they never stated his injury was self-inflicted.  (Id.)

After returning to ASMP, Plaintiff was under constant observation in the prison hospital for three weeks.  (Id. at 16.)  While Plaintiff was in the prison hospital, Warden Wilkes conducted an inspection.  (Id. at 18.)  Plaintiff attempted to speak to Warden Wilkes about the injury, but once he realized who Plaintiff was, Warden Wilkes informed Plaintiff he watched the camera footage and did not see anything resembling Plaintiff's allegations.  (Id.)  Plaintiff asked Warden Wilkes to preserve the recording.  (Id.)  Plaintiff also requested the name of the officer who injured him, but Warden Wilkes refused.  (Id. at 19.)  Plaintiff was not familiar with ASMP staff because he was only there for a medical appointment.  (Id.)  Plaintiff attempted to obtain the names of Officers Davis and Doe daily.  (Id.)  Plaintiff only learned Officer Davis's name after another officer "let it slip."  (Id.)

3

Plaintiff submitted a grievance, which Warden Wilkes turned over to the Internal Affairs Unit. (Id. at 7.) Plaintiff's nerve damage has not fully recovered after nearly two years. (Id. at 17.) As relief, Plaintiff seeks $200,000 in compensatory damages and $999,999.99 in punitive damages against each Defendant. (Id. at 5.) Plaintiff also seeks to charge Officer Davis with attempted murder. (Id.)

### B.    Procedural History

On August 31, 2018, Plaintiff's complaint was docketed, and Plaintiff paid the filing fee. (Doc. no. 1.) On September 4, 2018, the Court provided basic instructions regarding the progression of the case and how to serve Defendants. (Doc. no. 4.) The Court informed Plaintiff he must serve Defendants within ninety days from the date his complaint was filed. (Id.) On December 7, 2018, Plaintiff moved for additional time to serve Defendants. (Doc. no. 8.) On December 11, 2018, the Court ordered the United States Marshals Service to effect service on Plaintiff's behalf. (Doc. no. 9.) On January 28, 2019, the Court entered an order indicating the Marshals Service identified Defendant John Doe as Horace Ryans and extended the service deadline. (Doc. no. 16.) Warden Wilkes waived service on January 3, 2019, (doc. no. 19), and Officer Davis waived service on February 22, 2019, (doc. no. 21). On March 1, 2019, Warden Wilkes and Officer Davis answered Plaintiff's complaint. (Doc. no. 22.)

On March 14, 2019, the Marshals Service returned the waiver of service form sent to Officer Ryans unexecuted, and, on March 19, 2019, the Court directed the Marshals Service to effect personal service on Officer Ryans. (Doc. nos. 26, 27.) The Marshals Service's first attempt at personal service on Officer Ryans was insufficient because it was served on

Officer Ryans's father. (Doc. nos. 29, 30.) However, counsel for Warden Wilkes and Officer Davis indicated he would be willing to accept service on Officer Ryans's behalf, and the Court asked counsel to file an executed acknowledgement of service. (Doc. no. 30.) On April 18, 2019, Officer Ryans filed an answer and the present motion to dismiss. (Doc. nos. 31, 32.)

In his motion to dismiss, Officer Ryans argues Plaintiff's claims against him are barred by the two-year statute of limitations because the alleged violation occurred on January 17, 2017, and he was not named in this lawsuit until January 28, 2019, when the Court identified him based on information from the Marshals Service. (See doc. no. 32-1.) In response, Plaintiff argues he is entitled to equitable tolling for the time between when the injury occurred and February 15, 2017, when he exhausted his administrative remedies, and, thus, Officer Ryans was timely identified and named as a Defendant.[1] (Doc. no. 42.)

In his reply, Officer Ryans argues, even if equitable tolling is available while a prisoner exhausts his administrative remedies, Plaintiff is not entitled to equitable tolling because he: (1) was not diligent in attempting to identify Officer Ryans in a timely manner; and (2) the exhaustion requirement was not an extraordinary circumstance preventing him from doing so. (Doc. no. 47.) In his sur-reply, Plaintiff argues he is entitled to equitable tolling because of the following exceptional circumstances: (1) Plaintiff was required to exhaust administrative remedies; (2) ASMP staff refused to identify Officer Ryans; (3)

---

[1]Plaintiff also discussed several discovery-related issues in his response, which were not relevant to Officer Ryans's motion to dismiss. (Doc. no. 42, pp. 8-15.) Accordingly, the Court does not consider those issues here.

5

Officer Ryans was assigned to overseas service in the Marines; and (4) the Marshals Service was responsible for locating and serving Defendants. (Doc. no. 49.)

## II. DISCUSSION

### A. Legal Standard for Rule 12(b)(6) Motion

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014). The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing]

enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Officer Ryans's Motion to Dismiss Should Be Granted Because He Was Not Identified in A Timely Manner

It is "well-settled that § 1983 claims filed in Georgia are governed by the same two-year statute of limitations for personal-injury actions." Flowers v. Fulton Cty. Sch. Sys., 654 F. App'x 396, 401 (11th Cir. 2016) (citing Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986)). State law controls the length of the statute of limitations period in § 1983 actions. Abreu-Velez v. Bd. of Regents of Univ. Sys. of Ga., 248 F. App'x 116, 117 (11th Cir. 2007); Lawson v. Glover, 957 F.2d 801, 803 (11th Cir. 1987). In Georgia, such claims for injuries to the person must be brought within two years of their accrual. Richards v. Cobb County, Ga., 487 F. App'x 556, 557 (11th Cir. 2012); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986); O.C.G.A. § 9-3-33. Although state law determines the applicable statute of limitations period, federal law determines the date of accrual. See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003); Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under § 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Brown, 335 F.3d at 1261 (quoting Rozar, 85 F.3d at 561-62).

Generally, an amendment changing the name of a party relates back to the original pleading if the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P.

15(c)(1)(C). However, "[a] plaintiff's amendment to identify parties previously designated as 'John Doe' defendants in the complaint does not relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15 because the amendment is made to correct the plaintiff's lack of knowledge about whom to sue, not a mistake by the defendant in identifying the proper party." Bloodworth v. United States, 623 F. App'x 976, 979 (11th Cir. 2015) (citing Wayne v. Jarvis, 197 F.3d 1098, 1103-04 (11th Cir. 1999), *overruled in part on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (en banc). As the Eleventh Circuit explained,

> [C]ommentary [to Rule 15] implies that the rule is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification. Because [Plaintiff]'s lack of knowledge was not an error, a misnomer, or a misidentification, his amendment does not come within Rule 15(c)(3)(B). While we have stated that we read the word "mistake" in Rule 15(c) liberally, we do not read the word "mistake" to mean "lack of knowledge." For these purposes, ignorance does not equate to misnomer or misidentification.

Wayne, 197 F.3d at 1103 (11th Cir. 1999) (internal quotations and citations omitted).

Officer Ryans should be dismissed because Plaintiff failed to identify him within the statute of limitations, and the subsequent identification does not relate back to the filing of the original complaint.

In his complaint, Plaintiff alleges Officer Ryans—identified as John Doe—failed to intervene when Officer Davis injured Plaintiff's arm in the cell door on January 17, 2017. (Doc. no. 1, p. 5.) Plaintiff alleges he was unable to identify the John Doe officer because ASMP staff would not provide him with the information. (Id. at 19.) On January 28, 2019, the Court directed the Clerk to update the John Doe Defendant's name as Officer Horace

Ryans after the Marshals Service identified Officer Ryans as the correct officer. (Doc. no. 16.) Notably, Plaintiff never independently identified Officer Ryans as John Doe.

The alleged events in Plaintiff's complaint took place on January 17, 2017. (Doc. no. 1, p. 5.) Thus, the statute of limitations for his § 1983 claims expired on January 17, 2019. Plaintiff named Officer Ryans as a John Doe Defendant at the time he filed his complaint because Plaintiff lacked knowledge regarding his identities at the time of filing. (Id. at 19.) When the statute of limitations expired on January 17, 2019, Plaintiff remained unaware of Officer Ryan's identity.

Plaintiff argues the identification of Officer Ryans by the Court should relate back because Officer Ryans should have known an action would be brought against him because he was present and aware of the January 17, 2017 events. (Doc. no. 49-1, pp. 9-10.) However, as described above, Plaintiff's lack of knowledge as to Officer Ryans's identity does not constitute a "mistake" allowing an amendment to relate back under Rule 15. Accordingly, the statute of limitations would prevent any attempt to amend the complaint to identify Officer Ryans as the John Doe Defendant. Bloodworth, 623 F. App'x at 979. Plaintiff "waited too long before setting about to find crucial information he needed to make his claim against" Officer Ryans and, thus, "bears the consequences of his own delay." Wayne 197 F.3d at 1104.

### C. Plaintiff Is Not Entitled to Equitable Tolling

"The general test for equitable tolling requires the party seeking tolling to prove that: (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood

9

in his way and prevented timely filing." Rager v. Augustine, 760 F. App'x 947, 950-51 (11th Cir. 2019) (citing Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 971 (11th Cir. 2016)). In other words, "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are beyond his control and unavoidable even with diligence, which the plaintiff bears the burden of showing. Id.; see also Salas v. Pierce, 297 F. App'x 874, 877 (11th Cir. 2008) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002)). The Eleventh Circuit has declined to address the question of whether the statute of limitations is tolled while a prisoner exhausts administrative remedies as a mandatory prerequisite for filing a federal lawsuit. Rager, 760 F. App'x at 950-51 (citing Leal v. Georgia Dep't of Corr., 254 F.3d 1276, 1280 (11th Cir. 2001)); see also Zamudio v. Haskins, No. 18-13534, 2019 WL 2374253, at *2-3, n.2 (acknowledging other circuits apply tolling principles during prisoner's exhaustion of administrative remedies).

Plaintiff argues Officer Ryans was timely identified as a party because Plaintiff is entitled to equitable tolling for the time it took to exhaust his administrative remedies. (Doc. nos. 42, 49.) To show he is entitled to equitable tolling, Plaintiff must show (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. Rager, 760 F. App'x at 950-951. Plaintiff cannot satisfy either prong of this test.

### 1. Diligence

First, Plaintiff has not shown he made diligent efforts to identify Officer Ryans prior to the expiration of the statute of limitations. The events in Plaintiff's complaint allegedly took place on January 17, 2017. (Doc. no. 1, p. 5.) Plaintiff filed a grievance concerning the

events on January 22, 2017, and the grievance was forwarded to the Office of Professional Standards on February 15, 2017, exhausting Plaintiff's administrative remedy as to the claim. (Doc. no. 47, pp. 11-12.)  In his complaint, Plaintiff stated nobody would give him information about Officer Ryans during the three weeks he was at ASMP after the incident. (Doc. no. 1, p. 19.)  However, Plaintiff filed the present lawsuit on June 12, 2018, more than sixteen months after he exhausted his administrative remedies.  (Doc. no. 1, p. 10.)  Plaintiff does not describe any efforts he made to ascertain the identity of Officer Ryans following the initial three weeks after the incident. Thus, Plaintiff's allegations show he was not diligent in his attempts to identify Officer Ryans prior to Officer Ryans being identified by the Court.

Plaintiff argues he was not required to make further efforts to identify Officer Ryans, such as making open records requests, especially in light of Officer Ryan's claims he was serving in the Marines in Japan. (Doc. no. 49-1, pp. 7-8.)  While Plaintiff was not required to follow any specific course of action in order to show diligent efforts to identify Officer Ryans, he is required to make some showing of diligence to warrant equitable tolling. Plaintiff has failed to do so.  Plaintiff only he asked ASMP staff to identify Officer Ryans during the three weeks he remained at ASMP after the attack.  He did not make any further efforts to identify Officer Ryans during the remaining fifteen months before he filed this lawsuit or the additional nine months before the statute of limitations expired.  In short, the application of equitable tolling is precluded by Plaintiff's lack of diligent efforts to identify Officer Ryans.

### 2. Extraordinary Circumstances

Plaintiff also fails to satisfy the second requirement for equitable tolling because he has not shown any extraordinary circumstance stood in his way and prevented him from timely identifying Officer Ryans and adding him as a party. Plaintiff argues the following extraordinary circumstances stood in the way of him identifying Officer Ryans in a timely manner: (1) being required to exhaust his administrative remedies; (2) ASMP staff's refusal to identify Officer Ryans; (3) Officer Ryans's overseas assignment in the Marines; and (4) the United States Marshal Service was responsible for locating and serving Defendants. Plaintiff's arguments fall far short of showing the existence of an extraordinary circumstance warranting equitable tolling.

First, Plaintiff does not allege why exhausting administrative remedies prevented him from identifying Officer Ryans prior to the expiration of the statute of limitations. Plaintiff filed his grievance five days after the attack on January 22, 2017, and the grievance was forwarded to the Officer of Professional Standards for review on February 15, 2017, ending the mandatory grievance procedure. (Doc. no. 42, p. 2; doc. no. 47, pp. 11-12.) However, Plaintiff does not explain why exhausting his administrative remedies prevented him from identifying Officer Ryans either during the twenty-four-day period it took him to exhaust his administrative remedies or during the remaining twenty-two months that passed before the statute of limitations expired. Indeed, it appears the only effort Plaintiff made to identify Officer Ryans took place while he was exhausting his administrative remedies at ASMP. Thus, being required to exhaust administrative remedies does not qualify as an extraordinary circumstance warranting equitable tolling. Relatedly, Plaintiff argues he received equitable

tolling for the period during which he exhausted his administrative remedies in a previous, unrelated lawsuit. (Doc. no. 42, pp. 4-6 (citing Jenkins v. Hutchinson, CV 614-081 (S.D. Ga. July 31, 2014)). The Eleventh Circuit has recently indicated a prisoner plaintiff must satisfy the general requirements to be entitled for equitable tolling while exhausting his or her administrative remedies. Zamudio, 2019 WL 2374253, at *3; Rager, 760 F. App'x 950-51. Thus, regardless of whether the Court determined equitable tolling was appropriate in his previous lawsuit, Plaintiff must be able to satisfy the requirements of equitable tolling as to his claims in this case to be entitled thereto. As described herein, Plaintiff has failed to do so.

Second, ASMP staff's refusal to identify Officer Ryans is not an extraordinary circumstance warranting equitable tolling. As discussed above, Plaintiff failed to make diligent efforts to identify Officer Ryans. Thus, Plaintiff cannot show he could not have obtained the information by other means and, as a result, the refusal by ASMP staff cut off his only means of obtaining the information. Thus, the mere refusal to obtain the information on Plaintiff's behalf does not constitute an extraordinary circumstance. Furthermore, if a prison official's decision not to identify potential defendants for each inmate filing a lawsuit constituted a basis for equitable tolling, it would severely undermine the statute of limitations and restrictions on subsequent identification of John Doe defendants contained in Rule 15(c)(1)(C), as prisoner plaintiff are often required to identify the relevant officials after the incidents at issue.


Third, Officer Ryans's overseas assignment hardly satisfies the extraordinary circumstance requirement, as there is no reason to believe Officer Ryan's location at any time prior to the expiration of the statute of limitations had an effect on Plaintiff's ability to identify him.  Indeed, there is no reason to believe Officer Ryans's assignment had any effect on Plaintiff's ability to identify him, especially considering the lack of diligent efforts made by Plaintiff after he was transferred from ASMP.

Finally, Plaintiff argues extraordinary circumstances exist because the Marshals Service was responsible for serving Defendants.  (Doc. no. 49-1, p. 3.)  Plaintiff's argument ignores the fact he was initially responsible for serving Defendants, utterly failed in that regard, and the Court accordingly ordered the Marshals Service to effect service on Plaintiff's behalf on December 11, 2018.  (Doc. nos. 4, 6, 9.)  Furthermore, the Court warned Plaintiff he was "responsible for providing sufficient information for the Marshal to identify and locate each Defendant to effect service."  (Id. at 2.)  There is no indication Plaintiff ever attempted to do so.  Finally, without the Marshals Service, it is highly likely Officer Ryans would still remain a John Doe Defendant, as Plaintiff never made any independent effort to identify him after filing the complaint.  Thus, Plaintiff's argument is completely unavailing.

In sum, Plaintiff has not shown he is entitled to equitable tolling.  Accordingly, Officer Ryans should be dismissed from this lawsuit  because he was named as a party to this lawsuit only after the statute of limitations for doing so had expired, his identification does not relate back to the filing of the original complaint, and Plaintiff is not entitled to equitable tolling .

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Officer Ryans's motion to dismiss be **GRANTED**, (doc. no. 32), and Officer Ryans be **DISMISSED** from this case.

SO REPORTED and RECOMMENDED this 17th day of July, 2019, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA