IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ADRIAN JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-140 |
| | ) | |
| OFFICER DAVIS and WARDEN WILKES, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate incarcerated at Smith State Prison, is proceeding *pro se* in this case filed pursuant to 42 U.S.C. § 1983, concerning events that allegedly occurred at Augusta State Medical Prison ("ASMP"), in Grovetown, Georgia. Before the Court are cross motions for summary judgment regarding Plaintiff's Eighth Amendment claims for excessive force, failure to protect, and deliberate indifference. The Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 54), Defendants' motion for partial summary judgment be **GRANTED IN PART**, (doc. no. 73), and Plaintiff's Motion to Have Exhibit 100 Considered be **DENIED AS MOOT**, (doc. no. 84). The Court should **GRANT** summary judgment as to all claims against Warden Wilkes and the official capacity claims against Officer Davis. The case should proceed to trial on Plaintiff's Eighth Amendment excessive force and medical deliberate indifference claims against Officer Davis arising out of Plaintiff's alleged attack on January 17, 2017.

**I.     PROCEDURAL BACKGROUND**

On August 31, 2018, Plaintiff filed his complaint and paid the filing fee.  (Doc. no. 1.)  Plaintiff originally named Officer Davis, John Doe, and Warden Wilkes as Defendants.  (Id.)  On October 23, 2018, Plaintiff amended his complaint as of right to specify Defendant Warden Wilkes is being sued in his official and individual capacities.  (Doc. no. 5.)  On January 28, 2019, the Court entered an order explaining the Marshals Service identified Defendant John Doe as Horace Ryans and extended the service deadline.  (Doc. no. 16.)  On March 1, 2019, Defendants Warden Wilkes and Officer Davis answered Plaintiff's complaint.  (Doc. no. 24.)

On July 25, 2019, Plaintiff moved for summary judgment and submitted several exhibits and a declaration in support of his motion.  (Doc. nos. 55, 56.)  On August 28, 2019, the Court dismissed Officer Ryans because Plaintiff named him as a Defendant after the statute of limitations expired, leaving Officer Davis and Warden Wilkes as Defendants.  (Doc. no. 71.)  On September 3, 2019, Defendants Officer Davis and Warden Wilkes moved for partial summary judgment.  (Doc. no. 73.)  Additionally, on October 10, 2019, Plaintiff filed a motion to have exhibit 100 considered when ruling on his motion for summary judgment, and to have certain references to the docket corrected.  (Doc. no. 84.)

Both parties filed statements of material facts.  (Doc. nos. 55, 74.)  The Court deems admitted all undisputed facts which find support in the record.  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v.

2

Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (deeming admitted all unopposed fact statements supported by the evidentiary materials of record). As to the disputed facts, the Court will review each parties' statement of material facts and the evidentiary record "to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1303 (11th Cir. 2009).

## II.    FACTS

### A.    Plaintiff's Version of Events

On January 17, 2017, Plaintiff was transferred to ASMP for a medical appointment and housed in segregation dorm 12-A, where Officer Davis was working. (Pl.'s Dep., doc. no 62-1, pp. 4-5.) Inmate Michael Hubbard was transferred with Plaintiff, and they were taken to the showers until Officers Davis and Ryans moved them to individual cells. (Id. at 7.) Officer Davis escorted Plaintiff to his cell and locked Plaintiff in the cell. (Id. at 10.) Officer Davis opened the tray flap in the door and removed Plaintiff's handcuffs. (Id. at 10-11.) Plaintiff kept his right arm through the tray flap to ask Officer Davis about consulting with a mental health counselor. (Id. at 11.) Officer Davis asked Plaintiff to remove his arm from the tray flap. (Id.) Plaintiff asked again to see a counselor immediately and did not remove his arm. (Id. at 12, 24.) Without a response or warning, Officer Davis closed the forty-five-pound tray flap down on Plaintiff's arm, kicked the flap against Plaintiff's arm six times, and used his hands to slam the flap against Plaintiff's arm six or seven more times. (Id.) Officer Davis held the flap up and yelled at Plaintiff to move his arm. (Id. at 13, 23.)

Plaintiff did not realize his arm was bleeding until he pulled it back into the cell. (Id. at 13.) Plaintiff asked for help while Officer Davis locked the tray flap. (Id. at 17.) Officers

3

Davis and Ryans abandoned Plaintiff, who remained in the locked cell alone for more than an hour with a severed artery. (Pl.'s Dep., pp. 36-37; doc. no. 55, pp. 2, 21.) Plaintiff bled profusely after Officer Davis, who knew Plaintiff was injured, abandoned him. (Pl.'s Dep., pp. 17, 25, 27.) Officer Davis returned upstairs after the incident to escort inmate Hubbard from the showers. (Id. at 18.) Inmate Hubbard refused to allow the officers to uncuff him and demanded they provide Plaintiff with medical attention. (Id.) Officer Davis fed the entire dormitory and retrieved all the food trays while Plaintiff was injured. (Id. at 26.) Plaintiff laid on the floor and raised his arm in an attempt to stop it from bleeding. (Id. at 26-27.) Plaintiff stayed in this position for thirty to forty minutes while asking other inmates to get him medical attention. (Id. at 27.)

The dormitory orderly, Mr. Humphrey, arrived more than one hour later and provided medical assistance after noticing blood Plaintiff pushed under the door before collapsing on the cell floor. (Id. at 28-30.) Seeing Plaintiff on the floor of the cell, which was covered in blood, Mr. Humphrey notified the control booth of the emergency situation. (Id. at 29-30.) Lt. Chance and other medical staff arrived to provide medical assistance. (Doc. no. 75-2, p. 10.) Plaintiff's clothing, a sweater, t-shirt, and boxers, had to be cut off because of Plaintiff's limited movement and the amount of blood loss. (Doc. no. 55, p. 15.) Plaintiff was transported by ambulance to Augusta University Hospital, where he underwent surgery and was hospitalized for two days. (Doc. no. 55, p. 22; doc. no. 55-1, pp. 1-2.) Plaintiff suffered permanent nerve damage. (Doc. no. 55, p. 27.) Plaintiff was not in possession of any weapon at the time of his injury and has never been suicidal. (Id. at 11-12.) Plaintiff's injuries, two small puncture holes, are no longer visible. (Pl.'s Dep., p. 20.)

Warden Wilkes informed Plaintiff he watched the camera footage and did not see anything resembling Plaintiff's allegations. (Doc. no. 55, pp. 23-24.) Plaintiff asked Warden Wilkes to preserve the recording. (Id.) Plaintiff also requested the name of the officer who injured him, but Warden Wilkes refused to identify the officer. (Id.) Plaintiff submitted a grievance, which Warden Wilkes submitted to the Office of Professional Standards. (Doc. no. 65-3, pp. 5-6.)

### B.     Defense Version of Events

On January 7, 2017, Officers Davis and Ryans were assigned to different sides of inmate dormitory 12-A at ASMP. (Davis Aff., doc. no. 65-2, ¶ 4.) Shortly after Plaintiff's arrival at ASMP, community emergency response team officials temporarily transferred Plantiff to the shower area located on the top range of the dormitory while Plaintiff's cell was being prepared. (Id.) Officer Ryans requested Officer Davis's assistance in escorting Plaintiff from the shower to his cell because Plaintiff did not want to be placed in Tier One segregated confinement. (Id.) Officer Davis offered Plaintiff food if he would voluntarily enter his cell. (Id.) Plaintiff entered his cell without incident, and Officer Davis returned to the other side of the dormitory. (Id.) Shortly after, Officer Ryans asked Officer Davis for assistance after Officer Ryans saw Plaintiff cut himself in his cell. (Id.) Officer Davis arrived, and looking through the tray flap, saw that Plaintiff had cut himself. (Id.) Officer Ryans reported the emergency situation. (Ryans Aff., doc. no. 32-1, ¶ 4.) Officer Davis initiated a medical emergency radio call and assisted in placing Plaintiff on a stretcher to be transported to the medical area of the prison to receive medical attention. (Davis Aff., ¶ 4.)

Officer Davis did not assault or injure Plaintiff, abandon Plaintiff when he was

injured, or avoid getting medical attention for Plaintiff.  (Id. ¶ 5.)  Officer Ryans did not witness any officer use force against Plaintiff in the manner described by Plaintiff and believes his injuries were self-inflicted.  (Ryans Aff., ¶ 4.)  Officer Davis disagrees Plaintiff never had a weapon, although he never explains the basis for this belief.  (Davis Aff., ¶ 5.)  After Plaintiff filed a grievance, Officer Davis was interviewed by an investigator, who determined Plaintiff's allegations of force were unsubstantiated.  (Id. ¶ 8.)  Officer Davis received no disciplinary action as a result of the January 17, 2017 incident.  (Id. ¶ 7.)

Warden Wilkes did not participate in the January 17, 2017 incident which gave rise to Plaintiff's claims, and he was not present when it allegedly occurred.  (Wilkes Aff., doc. no. 65-3, ¶ 5.)  Warden Wilkes did not direct Officer Davis or Officer Ryans to kick or slam Plaintiff's arm in a cell door tray flap and did not participate in the alleged decision to do so.  (Id. ¶¶ 5-6.)  Warden Wilkes did not disregard or conceal the alleged use of force or attack of Plaintiff.  (Id. ¶ 7.)  Warden Wilkes reviewed Plaintiff's grievance of the January 17, 2017 incident, which he forwarded to the Office of Professional Standards for review.  (Id.)  Except for the grievance, Warden Wilkes has not received any written communication from Plaintiff concerning this action.  (Id. ¶ 8.)

Warden Wilkes has no recollection of speaking with Plaintiff about his alleged January 17, 2017 attack.  (Id.)  As Warden, it is his general practice not to speak with inmates about active cases, grievances, or allegations of misconduct.  (Id.)  Warden Wilkes has reviewed materials maintained by the Georgia Department of Corrections ("GDOC") which pertain to Plaintiff's alleged incident of excessive force.  (Id.)  GDOC operating procedures do not require the termination of employment for officers prior to the completion

of an investigation under the circumstances alleged by Plaintiff. (Id. ¶ 11.)

### C. Plaintiff's Medical Records

Plaintiff's medical records reveal he was admitted to the emergency room on January 17, 2017 at 7:36 pm. (Doc. no. 55-1, p. 1.) The medical records show Plaintiff was hospitalized because of a suspected "right brachial artery injury." (Id. at 15.) Plaintiff informed the medical staff his arm was slammed in a metal door and he believed his arm was broken as a result. (Id. at 17.) Plaintiff was diagnosed with decreased radial pulse, lacerations of multiple sites of the right arm, trauma, traumatic hematoma of the right upper arm, and bruising of the brachial venous. (Id. at 1, 73.) Despite his injuries, Plaintiff's sensation in his right arm was intact and he was able to move everything "distal to his injuries." (Id. at 17.) An x-ray of Plaintiff's right arm revealed "no acute fracture or malalignment" of the right humerus, elbow, or forearm, no aggressive bone lesion or abnormal periosteal reaction of the right humerus or forearm, and a healed soft tissue laceration overlying the mid humerus with extensive soft tissue gas. (Id. at 21.) The discharge summary describes the major procedures undertaken to address Plaintiff's injuries as follows: anesthesia, arterial line placement, central venous line placement, conventional ventilation, echocardiography, electrocardiography (EKG), fluid replacement therapy, fluoroscopy, peripheral arterial line, ultrasonography, urinary catheter placement, upper arm exploration, evacuation of hematoma, fogarty thrombectomy of brachial artery, and repair of brachial artery. (Id. at 2.) Plaintiff was discharged from the hospital on January 19, 2017. (Id. at 1.)

### III.     DISCUSSION

#### A.     Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by

affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendants' Motion for Partial Summary Judgment

Defendants contend they are entitled to judgment as a matter of law on the following grounds: (1) Plaintiff cannot recover on any claim for money damages that is asserted against the individual Defendants in their official capacities, (2) Plaintiff cannot prevail on his failure to protect or medical deliberate indifference claims against Defendant Wilkes, as he was not personally involved in either the alleged use of force or the alleged delay in providing or obtaining medical care, and the claims instead are premised on a supervisory liability theory, and (3) Plaintiff cannot recover more than nominal damages on any claim because the evidence shows he did not suffer a greater than *de minimis* physical injury. (Doc. no. 73, p. 1.) Defendants do not seek summary judgment on Plaintiff's excessive force and medical deliberate indifference claims against Officer Davis. (Id.) However, Defendants contend if Plaintiff were to prevail on those claims at trial, Plaintiff could only recover nominal damages. (Id.) In opposition, Plaintiff argues he suffered more than *de minimis* injury and objects to certain evidence offered in support of Defendants' Motion for Partial Summary Judgment. (Doc. no. 80.)

1.   **Defendants Are Entitled to Summary Judgment in Their Official Capacities**

Plaintiff sues Defendants individually and in their official capacities. (Doc. no. 1, pp. 2-3; doc. no. 5.) However, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). It is clear from Plaintiff's complaint Defendants are state prison officials, and Plaintiff is seeking money damages. Therefore, Plaintiff's official capacity claims for monetary damages fail as a matter of law and Defendants are entitled to summary judgment in their official capacities.

2.   **Plaintiff Cannot Hold Warden Wilkes Liable Based on a Theory of Supervisory Liability**

Warden Wilkes asserts he is entitled to summary judgment on Plaintiff's claims because he was not personally involved in either the alleged use of force or the alleged delay in providing or obtaining medical care, and the claims instead are premised on a supervisory liability theory. (Doc. no. 73, p. 1.) It is undisputed Warden Wilkes was not present at the time the alleged constitutional violation occurred and was not personally involved. (Pl.'s Dep., p. 20.) Therefore, it appears Plaintiff is attempting to hold Warden Wilkes liable under a theory of *respondeat superior*. Yet, "[s]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that

employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Warden Wilkes liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between his actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff concedes he is suing Warden Wilkes for his response to Plaintiff's attack after it was brought to his attention. (Pl.'s Dep., p. 20.) Nowhere does Plaintiff contend Warden Wilkes was actually present or participated in the events alleged to have occurred on January 17, 2017.

Therefore, Plaintiff must provide evidence of a causal connection between Warden Wilkes and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the

Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

There are no facts to support the necessary causal connection. Plaintiff attempts to connect Warden Wilkes to the alleged constitutional violation by contending he (1) refused to disclose the identities of Officers Davis and Ryans; (2) refused to produce video footage of the alleged attack; (3) failed to authorize a drug test of Officer Davis following the alleged attack; and (4) failed to take any disciplinary action against Officer Davis. (Doc. no. 55, pp. 23-25.) These allegations, even if supported with evidence, concern Warden Wilkes' reaction to Plaintiff's allegations. There is no evidence to suggest a history of widespread abuse, any custom or policy allowing such abuse, or any evidence of Warden Wilkes allowing such abuse. A single incident is insufficient to show a history of widespread abuse sufficient to put Warden Wilkes on notice. Brown, 906 F.2d at 671. Finally, there is no evidence of any custom or policy adopted by or known to Warden Wilkes that caused the alleged attack of Plaintiff. Hartley, 193 F.3d at 1269.

In sum, Plaintiff has not shown Warden Wilkes actually participated in any alleged constitutional violation; nor has he drawn the necessary causal connection to any alleged constitutional violation. Therefore, Plaintiff may not hold Warden Wilkes liable under § 1983

on the basis of *respondeat superior* or vicarious liability, and he is entitled to summary judgment.

### 3. Plaintiff is Not Limited to Nominal Damages Under § 1997e(e)

Defendants argue Plaintiff is only entitled to nominal damages because his injuries were at most *de minimis*. (Doc. no. 73, pp. 12-13.) Section 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Thus, the Prison Litigation Reform Act prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309, 1312-13 (11th Cir. 2002). To survive application of the § 1997e(e) bar, the physical injury must be more than *de minimis*. Id. at 1213. "The meaning of the phrase 'greater than *de minimis*,' however, is far from clear." Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009).

In support of their argument Plaintiff has not suffered more than *de minimis* physical injury, Defendants emphasize Plaintiff presented no evidence of lasting injury, has no scarring, and can do "whatever he wants to do with his right arm." (Doc. no. 73, p. 13.) However, reasonable jurors could find Plaintiff's injuries are not *de minimis*. Due to Plaintiff's amount of blood loss, he was transported by ambulance to Augusta University Hospital, where he was diagnosed with a brachial artery injury, underwent surgery to repair the damage, and was hospitalized for two days. (Doc. no. 55-1, pp. 1-2.) Plaintiff was diagnosed with decreased radial pulse, lacerations of multiple sites of the right arm, trauma,

13

traumatic hematoma of the right upper arm, and bruising of the brachial venous. (Id. at 1, 73.) Additionally, due to the extent of his injuries, medical staff x-rayed Plaintiff's arm to determine whether it was fractured. (Id. at 20.); see Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (quoting Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997)) (describing a more than *de minimis* injury as "an observable or diagnosable medical condition requiring treatment by a medical care professional.") Thus, contrary to Defendants' argument, the Court finds Plaintiff has put forth enough evidence for a jury to determine his physical injuries were more than *de minimis*. Cf. Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding plaintiff's claims of vague injuries to his back and scrapes and marks on his knees and legs were barred by § 1997e(e)); Quinlan v. Pers. Transp. Servs. Co., 329 F. App'x 246, 249 (11th Cir. 2009) (finding plaintiff's complaints of temporary chest pain, headache, difficulty breathing, and periodic episodes of back pain were *de minimis* because they did not require immediate medical attention); Owens v. Hart, No. 1:14-CV-1 (WLS), 2016 WL 450297, at *2 (M.D. Ga. Feb. 4, 2016) (noting Plaintiff's injuries did not involve a single scratch or abrasion, but numerous abrasions and hematomas and may cumulatively support a finding he suffered more than *de minimis* injury).

### C. Plaintiff's Motion for Summary Judgment

Plaintiff contends he is entitled to summary judgment because: (1) his injuries were sufficiently serious to establish a constitutional violation; (2) Defendants' actions caused the unnecessary and wanton infliction of pain; (3) the force used by Officer Davis was for the purpose of causing harm; (4) Defendants were deliberately indifferent to his medical needs based on Plaintiff's delay of medical treatment; and (5) Plaintiff is entitled to punitive

damages.  (Doc. nos. 54, 55.)  Defendants Officer Davis and Warden Wilkes argue Plaintiff is not entitled to summary judgment because a reasonable jury could return a verdict in favor of Defendants.  (Doc. no. 65.)  Defendants also object to inadmissible evidence offered in support of Plaintiff's Motion for Summary Judgment.  (Id.)

### 1. Plaintiff Is Not Entitled to Summary Judgment on His Failure to Protect Claim

Plaintiff asserts he is entitled to summary judgment on his failure to protect claim against Defendants.  (Doc. no. 54.)  However, it is clear from the record Plaintiff asserted this Eighth Amendment claim against Officer Ryans, contending he failed to intervene and stop the attack by Officer Davis.  (Pl.'s Decl., ¶ 5; Pl.'s Dep., p. 37; doc. no. 55, p. 25.)  On August 28, 2019, Officer Ryans was dismissed from this action because he was named as a party after the statute of limitations expired.  (Doc. no. 71.)  Therefore, Plaintiff is not entitled to summary judgment on his failure to protect claim because it is clear from the evidentiary record this claim was not brought against the remaining Defendants.

### 2. Plaintiff Is Not Entitled to Summary Judgment on His Excessive Force Claim Because Reasonable Jurors Could Find Officer Davis Did Not Act Maliciously and Sadistically to Cause Harm to Plaintiff

In both his deposition and declaration, Plaintiff maintains that without any provocation, Officer Davis violently and repeatedly slammed a metal tray flap on Plaintiff's arm which resulted in severe injuries and hospitalization.  (Pl.'s Decl., ¶ 1; Pl.'s Dep., p. 12.)  Officer Davis contends he did not use excessive force against Plaintiff.  In his affidavit, Officer Davis declares he did not assault or injure Plaintiff by repeatedly kicking and slamming Plaintiff's arm in a cell door tray flap.  (Davis Aff., ¶ 5.)  Instead, he alleges

Plaintiff's injuries were self-inflicted at a time when Officer Davis was on the other side of the dormitory. (Id. ¶¶ 4-5.) Viewing the facts in the light most favorable to Officer Davis, Plaintiff would have no excessive force claim because Officer Davis was completely uninvolved in Plaintiff's injuries.

Because there is a genuine dispute of a material fact as to whether Officer Davis applied excessive force, let alone any force, Plaintiff is not entitled to summary judgment on his Eighth Amendment excessive force claim

### 3. Plaintiff Is Not Entitled to Summary Judgment on His Deliberate Indifference to a Serious Medical Need Claim Because a Reasonable Juror Could Return a Verdict in Favor of Officer Davis

Plaintiff contends he is entitled to summary judgment on his Eighth Amendment deliberate indifference to a serious medical need claim because Officer Davis abandoned Plaintiff after the attack, leaving him unattended without medical attention for more than an hour. (Pl.'s Decl., ¶ 5; doc. no. 55, p. 21.) Officer Davis opposes the motion, contending he acted immediately to obtain medical assistance upon learning of Plaintiff's injuries. (Davis Aff., ¶ 4.) Because a reasonable juror could return a verdict in favor of Officer Davis based on his version of events, Plaintiff is not entitled to summary judgment on his Eighth Amendment claim for deliberate indifference to a serious medical need.

### 4. Plaintiff's Witness Statements Are Inadequate to be Considered and, Even if Considered, They Do Not Change the Outcome

Attached to his complaint, Plaintiff filed a statement from another prisoner, Michael Hubbard, wherein Mr. Hubbard restates the events occurring on January 17, 2017. (Doc. no. 1-1.) Plaintiff attempts to rely on this statement as evidence Officer Davis used excessive

16

force against Plaintiff and abandoned him in his cell for more than an hour. (Doc. no. 55, p. 9.) However, the unsworn statement falls short of the requirements of 28 U.S.C. § 1746, which requires "a handwritten averment, signed and dated, that the statement is true under the penalties of perjury." McCaskill v. Ray, 279 F. App'x 913, 914-15 (11th Cir. 2008) (citing 28 U.S.C. § 1746). Mr. Hubbard's statement was not made under penalty of perjury. (Doc. no. 1-1.) Therefore, Mr. Hubbard's statement cannot be considered as opposition to Defendants' motion for summary judgment. McCaskill, 279 F. App'x at 915 (refusing to consider unsworn declaration not including averment it was made under penalty of perjury on summary judgment). Just as importantly, summary judgment would still be inappropriate even if the Court were to consider Mr. Hubbard's statement. Mr. Hubbard's statement merely repeats the version of events espoused by Plaintiff the Court has discussed at length *supra*. (Doc. no. 1-1.)

Additionally, in his motion to amend his complaint, Plaintiff attaches the declaration of Eric Miller, a prisoner incarcerated at Smith State Prison, who allegedly experienced an injury similar to Plaintiff's as a result of a correctional officer slamming and kicking a metal tray flap on Mr. Miller's arm. (Doc. no. 20-5.) Plaintiff refers to this statement in his motion for summary judgment as providing "overwhelming" evidence Plaintiff's injury occurred as he alleged. (Doc. no. 55, p. 8.) Plaintiff asserts the statement is admissible because the similarities of the two injuries prove correctional officers exhibit "this type of injustice." (Doc. no. 72, pp. 25-26.) Mr. Miller's statement is irrelevant and not considered by the Court in support of Plaintiff's motion for summary judgment. Evidence which is not relevant is inadmissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to

17

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Here, the statement from Mr. Miller does not make it more or less probable Officer Davis used excessive force against Plaintiff. First, it is clear from Mr. Miller's statement Officer Davis was not the officer involved in Mr. Miller's alleged attack. (Doc. no. 20-5.) Second, Mr. Miller was not injured at ASMP, as was Plaintiff. (Id.) Instead, he was housed at a different prison, Hancock State Prison, at the time of his alleged injury. (Id.) Plaintiff's contention Mr. Miller's incident proves Plaintiff's injury was not self-inflicted is unfounded considering the alleged injuries occurred at two different prisons by two different officers. The prior acts of another person in a completely unrelated event and under completely different circumstances is irrelevant and inadmissible. Therefore, because the statement does not make it more or less probable Plaintiff suffered injury as a consequence of Officer Davis, the statement will not be considered. Just as importantly, even if the Court were to consider Mr. Miller's statement, there is still a genuine issue of material fact as to whether Officer Davis used any force against Plaintiff.

### 5. Plaintiff May Not Force Criminal Prosecution of Officer Davis

Finally, Plaintiff requests as relief that criminal charges be brought against Officer Davis. (See doc. no. 1, p. 5; doc. no. 55, p. 23.) As a private citizen, Plaintiff may not force prosecutors to bring criminal charges against Officer Davis. See Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Otero v. United States Att'y Gen., 832 F.2d 141, 141 (11th Cir. 1987) (same) (quoting Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973));

18

see also Capogrosso v. Supreme Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) ("[I]ndividual citizens do not have a constitutional right to the prosecution of alleged criminals."); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (holding that there is no constitutional right for a member of the public, as a victim, to have defendants, including state government officials, criminally prosecuted).  Thus, Plaintiff may not force criminal prosecution of Officer Davis.

### IV. PLAINTIFF'S MOTION TO HAVE EXHIBIT 100 CONSIDERED SHOULD BE DENIED AS MOOT

Plaintiff moves to have exhibit 100, a medical consultation form, considered in opposition to Defendants' motion for partial summary judgment.  (Doc. no. 84.)  Plaintiff argues the form disputes Defendants' contention his artery was not severed as a result of the January 17, 2017 attack.  (Id.)  Defendants oppose the motion, arguing it is untimely, it is undisputed Plaintiff's medical records show his artery was not severed, and the exhibit does not show Plaintiff suffered greater than *de minimis* injury.  (Doc. no. 85.)

Despite Plaintiff's contention he was unaware of the medical consultation form when responding to Defendants' motion for partial summary judgment, the record indicates Plaintiff included this form in his response to Defendants' motion.  (See doc. no. 80-3.)  In addition, the medical consultation form is simply a recitation of Plaintiff's belief his artery was severed and does not constitute an official medical opinion.  Therefore, because the form was included in Plaintiff's response and was properly considered by the Court, Plaintiff's motion to have exhibit 100 considered should be denied as moot.

## V.     CONCLUSION

The Court **REPORTS** and **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, (doc. no. 54), Defendants' motion for partial summary judgment be **GRANTED IN PART**, (doc. no. 73), and Plaintiff's motion to have exhibit 100 considered be **DENIED AS MOOT**, (doc. no. 84.).  The Court should **GRANT** summary judgment as to all claims against Warden Wilkes and the official capacity claims against Officer Davis.  The case should proceed to trial on Plaintiff's Eighth Amendment excessive force and medical deliberate indifference claims against Officer Davis arising out of Plaintiff's alleged attack on January 17, 2017.

SO REPORTED and RECOMMENDED this 6th day of February, 2020, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA